

Signed/Docketed
February 1, 2013

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

In re:  )
) Case No. 08-11751 MER
ADAM AIRCRAFT INDUSTRIES, INC.,  )
) Chapter 7
Debtor.  )

## ORDER

This matter comes before the Court on the First and Final Application Under 11 U.S.C. § 331[1] for Approval of Attorneys' Fees and Expenses (the "Application"),[2] filed by Allen & Vellone, P.C. ("A&V") and the objection thereto filed by George F. Adam, Jr. ("Adam").[3]  Based on the evidence and legal argument presented by the parties at the evidentiary hearing, the Court makes the following findings of fact and conclusions of law.

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) because it concerns the administration of the estate.

## BACKGROUND FACTS

The Trustee's Motion for Employment of A&V as Special Counsel was granted on March 11, 2010.[4]  On November 11, 2010, the Trustee filed a Motion to Approve Fee Agreement Between the Estate and Special Counsel,[5] seeking

---

[1] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

[2] Docket No. 1213.  Although the Application was designated as being filed under § 331, the Court notes § 331 permits interim compensation.  Since the Application is a final application, it falls under § 330, not § 331.

[3] Docket No. 1219.

[4] Docket No. 820.

[5] Docket No. 1009.

approval of a Modified Contingency Fee Agreement. Adam objected to the Motion, but after a hearing the Court granted the Motion on March 29, 2011.[6]

A&V was engaged by the Chapter 7 Trustee to investigate, evaluate, and prosecute claims against Morgan Stanley Senior Funding, Inc. and Morgan Stanley & Co. Inc. (collectively, "Morgan Stanley"). On December 3, 2010, A&V filed claims against Morgan Stanley in the United States District Court for the District of Colorado in Case No. 10-CV-02933, which case was voluntarily dismissed without prejudice on March 9, 2011. A&V then filed Adversary Proceeding No. 11-1156 MER on March 9, 2011 (the "Adversary Proceeding"), seeking equitable subordination of Morgan Stanley's secured and unsecured claims against the estate. The Trustee and Morgan Stanley entered into a Settlement Agreement and Release (the "Settlement Agreement") which was approved by the Court on July 3, 2012.[7] The Adversary Proceeding was dismissed on July 30, 2012.

According to the Settlement Agreement, Morgan Stanley, after distributions, had remaining secured claims against the Estate in the amount of $50,749,668.54. However, under the Settlement Agreement, Morgan Stanley assigned to the Trustee, pursuant to §§ 510 and 551, all its liens and other rights to all assets of the Debtor and the Estate, including its lien on the "Remaining Sale Proceeds" (that is, the $2,681,083.00 retained by the Trustee from the sale of the Debtor's assets on June 10, 2009).

A&V states prior to the Settlement Agreement, Morgan Stanley had a 91% interest in the Remaining Sale Proceeds (9% was reserved as the Trustee's Carveout Proceeds). Thus, without the Settlement Agreement, Morgan Stanley would have been entitled to share in all distributions to unsecured creditors. Under the Settlement Agreement, Morgan Stanley subordinated its unsecured claims against the estate "to all other claims in the Debtor's Bankruptcy Case."[8]

As noted above, A&V's work in this matter was performed pursuant to an approved Modified Contingency Fee Agreement. Under this Agreement, A&V agreed to provide services for a reduced hourly rate of 75% of A&V's standard rates. The Fee Agreement further provided A&V would receive a contingency fee of 15% of any "gross amount recovered" by the estate in the Adversary

---

[6] Docket No. 1114.

[7] Docket No. 1210.

[8] *Trustee's Exhibit 10,* Settlement Agreement, p. 3, ¶ 3.

Proceeding or settlement thereof.[9]  "Gross amount recovered" is defined as "the total amount recovered before any subtraction of expenses and disbursements, including any amount collected by virtue of trial or any settlement of the Matter prior to trial or **any reduction in the Client's liability to the Defendants under the Bankruptcy Code**."[10]

A&V contends the "gross amount recovered" by the Estate under the Settlement Agreement is at least $3,099,997.22, which amount may increase with additional recoveries by the Trustee.  Therefore, A&V asserts it is entitled to a contingency fee of 15% of at least $3,099,997.22, or at least $464,999.58.  A&V also asserts it is entitled to 75% of its standard hourly fees, reduced to 2010 rates, for an hourly fee total of $73,086.37.  Accordingly, A&V seeks a total award of $538,085.95 in fees and $10,145.82 in expenses.

Adam, the Debtor's former CEO, alleges the change to A&V's fee agreement to add a contingency fee of 15% was not in the best interest of the estate and constitutes a financial windfall to A&V without any change in the scope of work originally approved by this Court.  Adam contends A&V merely investigated and wrote the Complaint, and briefed the dismissal motion.

Further, Adam argues the results of the Adversary Proceeding did not benefit the estate because the main term of the Settlement Agreement was a release or subordination of its claim from the bankruptcy estate.  Although the Application states Morgan Stanley's claim was over $50 million, Adam maintains this amount was not "saved" from the estate because the estate did not have $50 million, but only approximately $2 million.  Therefore, Adam contends there was no "recovery" from Morgan Stanley, but rather a "loss" based upon the Debtor's abandoned claim against Morgan Stanley.[11]

Adam asserts the Court is not bound by the Modified Contingency Fee Agreement but instead should award only reasonable fees for work which benefitted the estate.  Adam maintains the gross misconduct of Morgan Stanley and its prepetition seizure of $30 million was the cause of the Debtor's failure, and should not have been settled for the forgiveness of further claims by Morgan Stanley.  Therefore, Adam alleges, no benefit accrued to the estate from A&V's work.

---

[9] *See Motion for Approval of Fee Agreement Between the Estate and Special Counsel* (Docket No. 1009), Exhibit A thereto, Modified Contingency Fee Agreement.

[10] *Id.*, at 1-2 (emphasis added).

[11] Adam also notes Morgan Stanley received $5,826,837.30 from the Debtor's estate in two payments in 2009 after the petition was filed.

However, according to A&V, the fee arrangement here represents a good deal for the estate because the result achieved by A&V in a relatively short period was the equivalent of what could have been achieved after prolonged, contested litigation and trial against Morgan Stanley, a formidable adversary. The Trustee estimated litigation could have cost the estate approximately $1 million in attorneys' fees and costs, with a low probability of success. A&V now requests only half that amount. Similarly, had A&V taken the matter on a pure contingency, the fee would be 33-50%, resulting in a fee application for $1 million to $1.5 million, or two to three times the instant application.

A&V disagrees and states a contingency fee should be permitted despite the fact cash was not recovered. During the non-evidentiary hearing in this matter, A&V pointed the release the Debtor signed, together with the choice of law issues, created uncertainty in collecting any damages against Morgan Stanley. While the estate paid approximately $5.8 million to Morgan Stanley at the beginning of the the Chapter 7 case, A&V points out this payment occurred well before A&V was engaged.

According to A&V, the benefit to the estate was not a mere reduction in "potential liability." Prior to the Settlement Agreement, the Trustee would have been required to turn over to Morgan Stanley all of the money in the Estate's accounts except the Trustee Carveout Proceeds and Trustee Recovery Proceeds. Under the Settlement Agreement, Morgan Stanley assigned its lien and all of its interests in the estate's funds to the estate. A&V argues this was the equivalent of the Trustee paying Morgan Stanley all funds in the estate on which Morgan Stanley had a lien, and Morgan Stanley writing a check back to the Trustee for the same amount, directly benefitting the estate and creditors. A&V further disputes Adam's contention the fee should be based on 15% of all recovery to the estate based on all actions filed in the case, not just the one filed by A&V. A&V contends such a calculation would lead to a higher fee, and asserts the correct value to the estate in this case under the Settlement Agreement is at least $3,099,997.22, with the contingency fee based upon that number.

## DISCUSSION

Fees in a bankruptcy proceeding are governed by federal law, and a bankruptcy court has a duty to monitor such fees.[12] The entity seeking fees

---

[12] *Dery v. Cumberland Casualty and Surety Co. (In re 5900 Associates, Inc.)*, 468 F.3d 326, 329-330 (6th Cir. 2006) (citing *In re Inslaw, Inc.*, 106 B.R. 331, 333 (Bankr. D.D.C. 1989) ("In a bankruptcy case fees are not a matter for private agreement. There is an inherent public interest that must be considered in awarding fees.")).

bears the burden of establishing entitlement to compensation.[13] With respect to compensation of professionals, § 328 provides:

> (a) The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

By contrast, § 330 states:

> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103--
>
>> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
>>
>> (B) reimbursement for actual, necessary expenses.[14]

However, the United States Bankruptcy Court for the District of New Mexico, and thereafter the United States Bankruptcy Appellate Panel of the Tenth Circuit have recently considered a "hybrid" fee, combining elements of

---

[13] *In re Perez*, 389 B.R. 180, 182 (Bankr. D. Colo. 2008).

[14] The United States Court of Appeals for the Fifth Circuit has recently described the difference between fees awarded under § 328 and fees awarded under § 330, noting the award of a contingency fee "pre-approved" by a court will only be reversed if the fee arrangement was improvident, while fees sought under § 330 are subject to review for reasonableness under factors illustrated by those set forth in § 330.   *In re ASARCO, L.L.C.*, ___F.3d ___, 2012 WL 6119756, *5-7 (5th Cir. Dec. 11, 2012).

both § 328 and § 330, that is, an hourly rate plus a contingency fee award similar to that sought in A&V's Application.[15]  Those rulings provide useful guidance in this case.

Section 330(a) requires professional services to be reasonably likely to benefit the estate or necessary to its administration.[16]  Further, courts have recognized that a threshold issue in the award of fees is the determination of whether an attorney's services benefitted the estate, and an applicant must establish such benefit to be awarded any fees.[17]  After such a benefit is shown, a court must then determine a reasonable fee, using the so-called "lodestar" analysis.[18]  Accordingly, the first question before this Court is whether the Settlement Agreement achieved by A&V's efforts benefitted the Debtor's estate.

Benefit to the estate can take many forms, and is not restricted to monetary benefit.[19]  In this case, it is undisputed the Settlement Agreement provided for Morgan Stanley to assign its lien of approximately $50 million to the bankruptcy estate.[20]  Further, the Settlement Agreement provides for Morgan Stanley to keep the distribution of $5,826,837.30 it obtained pursuant to the Court's orders of June 10, 2009, and September 2, 2009, but to subordinate its unsecured claims to "all other claims in the Debtor's Bankruptcy

---

[15]  *In re Market Center East Retail Property, Inc.*, 448 B.R. 43 (Bankr. D. N.M. 2011), *affirmed,* 469 B.R. 44 (10th Cir. BAP 2012).

[16]  11 U.S.C.  §§ 330(a)(3)(c) and (a)(4)(A)(ii).

[17]  "Debtor appropriately cites to *Rubner & Kutner, P.C. v. U.S. Trustee (In re Lederman Enterprises, Inc.)*, 997 F.2d 1321 (10th Cir. 1993) for the proposition that Applicant must establish benefit to the estate to receive any compensation." *Market Center*, 448 B.R. at 52.

[18]  *See Lederman*, 997 F.2d at 1323 (noting the Tenth Circuit in *First National Bank v. Niccum ( In re Permian Anchor Services, Inc.)*, 649 F.2d 763, 768 (10th Cir.1981), adopted the lodestar analysis set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), but stating benefit must be shown  before a reasonableness inquiry may be conducted).

[19]  *In re Kitts Development, LLC*, 474 B.R. 712, 721 (Bankr. D. N.M. 2012) (citations omitted).  For example, services provided by a Chapter 11 debtor's general counsel in connection with failed settlement of creditor's claim fell within provisions of bankruptcy statute allowing compensation to be paid for services necessary to administration of estate, permitting compensation to be paid, without economic benefit to creditors.  *In re Wireless Telecommunications, Inc.*, 449 B.R. 228, 232-233 (Bankr. M.D. Pa. 2011)

[20]  *Trustee's Exhibit 10,* Settlement Agreement, p. 3, ¶ 2.

Case."[21]  Accordingly, all of the estate's unencumbered funds may be paid to unsecured creditors other than Morgan Stanley, resulting in a benefit to the estate, and rendering the award of a contingent fee appropriate under the Modified Fee Agreement.  Although arguing A&V did not perform enough services to merit the contingent fee sought, Adam has not provided evidence to support a finding the contingent fee arrangement was "improvident in light of developments not capable of being anticipated at the time" of the Agreement.

Once benefit to the estate is shown, the Court must look at whether the fees are reasonable.  There is no requirement in the Bankruptcy Code that only hourly rate compensation may be used.  In fact, § 328(a) expressly indicates a professional may be employed "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."[22]  In addition to the *Market Center* cases, other courts have approved contingency fee agreements or "hybrid" agreements such as the one at issue here.[23]

In looking at reasonableness, courts in this circuit have relied on the so-called "*Johnson*"[24] factors:  1) time and labor required; 2) novelty and difficulty of the issues; 3) skill required to render proper legal services; 4) preclusion of other employment; 5) customary fee; 6) whether the fee is fixed or contingent; 7) time limits imposed; 8) amount involved and results obtained; 9) attorney's experience, reputation, and ability; 10) undesirability of the case; 11) length and nature of the attorney/client relationship; and 12) awards in similar cases.  Subsequently, these factors were largely incorporated into § 330(a)(3).[25]

In addressing the use of the § 330 factors in considering reasonableness, the *Market Center* Court stated:

> [T]he factors outlined in § 330(a)(3) are illustrative, not exhaustive.  Courts are not prohibited from considering other factors in making an

---

[21]  *Id.*, at ¶ 3.

[22]  11 U.S.C. § 328(a).  *See also In re Commercial Financial Services, Inc.*, 298 B.R. 733, 750 (10th Cir. BAP 2003).

[23]  *See In re RFS Ecusta Inc.*, 422 B.R. 53, 56-57 (W.D.N.C. 2009); *In re Midway Motor Sales, Inc.*, 355 B.R. 26, 34-36 (Bankr. N.D. Ohio 2006).

[24]  *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974), abrogated in part by *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989).

[25]  The Court notes the possibility of a contingent fee, in and of itself, is one of the *Johnson* factors, and remains permissible under § 328.

award under § 330(a). Indeed, the only prohibition upon a court's review of compensation is found when a court approves a contingent fee under § 328. It is well established that once a contingent fee has been approved under § 328(a), the bankruptcy court may not revoke such approval and award compensation upon something other than a contingent fee basis unless "such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." § 328(a). *See also In re Tex. Secs., Inc.*, 218 F.3d 443, 445-46 (5th Cir.2000). It is the approval of a contingent fee under § 328 that limits the inquiry of the bankruptcy court, not the mandate in § 330(a) that a bankruptcy court consider "all relevant factors."[26]

Here, the Application asserts the amount of the Settlement Agreement's reduction in the Debtor's liability to Morgan Stanley, ($3,099,997.22) should comprise the amount on which the contingent fee is based. In addition, A&V states it is entitled to 75% of its hourly fees, using the firm's 2010 billing rates, in the amount of $73,086.37, plus costs in the amount of $10,145.82. Fifteen percent of $3,099,997.22 is $464,999.58. Adding $73,086.37 results in a total fee request of $538,085.95, plus $10,086.37 in costs.

For the reasons set forth above, the Court finds the contingency fee component of the fee request to be appropriate because the estate benefitted due to reduced liability, and finds Adam has not established any basis for changing the Modified Contingency Fee Agreement. That portion of the fee request will therefore be approved in its entirety.

However, the Court finds that the hourly rate portion of the fee request must be denied without prejudice because A&V has attached only the summary of the hours billed, and has not categorized and itemized the services provided, as required by Local Bankruptcy Rule 2016-1(a).[27] In the absence of such

---

[26] *In re Market Center East Retail Property, Inc.*, 469 B.R. 44, 50-54 (10th Cir. BAP 2012).

[27] Local Bankruptcy Rule 2016-1(a) provides, in pertinent part:

(a) Form of Fee Application: Except for those applying for fees pursuant to L.B.R. 2016-3, every fee application filed pursuant to 11 U.S.C. §§ 330 or 331 must include a cover sheet in substantial conformity with L.B. Form 2016-1.1 and contain the following information:

> (1) Introduction: The introductory statement **must** contain a general statement of the status of the case and include the information required on L.B. Form 2016-1.1.

information, the Court cannot determine the reasonableness of the fees requested. The Court recognizes the fee statement was redacted, but notes no effort was made to provide the necessary information under seal or to make other arrangements to provide the information required under the Code and the Rules.

Based on its review of Exhibit 4 attached to the Application, the Court finds the expenses were appropriately itemized pursuant to L.B.R. 2016-1(4) and appear reasonable. Therefore the Court will approve reimbursement of expenses in their entirety.

For the above reasons,

IT IS HEREBY ORDERED A&V's Application is approved in the amount of $464,999.58, representing the contingency fee portion of the Application.

---

> (2) Narrative by Category: The professional fee application **must** contain a narrative that describes the work performed divided into categories of major/significant services. Within each category, the narrative **must** describe:
>
>> (A) the nature of the services,
>> (B) the result obtained,
>> (C) the benefit to the estate,
>> (D) a general description of what additional work remains to be done with respect to the matter,
>> (E) a statement of the number of hours spent on the particular matter and by whom, and
>> (F) the portion of the total fee applicable to the particular category.
>
> (3) Time Entries:
>
>> (A) Generally: The narrative description **must** refer to a separate exhibit containing copies of **detailed** time entries from records contemporaneously kept by the applicant which support the fee sought with respect to each particular matter or category, **including the date the work was performed, the individual performing the work, the time spent on each task (expressed in tenths of hours), the total fee for each task, and a detailed description of the work performed.**

L.B.R. 2016-1(a) (emphasis added).

For a fee applicant to meet the burden of showing reasonableness under § 330, "the entries on the billing statements must contain adequate detail and analysis of each task so that a Court can discern the nature and value of the services." *In re Colorado–UTE Electric Assoc., Inc.*, 132 B.R. 174, 177 (Bankr. D. Colo.1991).

IT IS FURTHER ORDERED that A&V's Application is approved in the amount of $10,086.37 for costs.

IT IS FURTHER ORDERED the remaining $73,086.37 in fees are denied without prejudice.

Dated February 1, 2013	BY THE COURT:

	Michael E. Romero
	United States Bankruptcy Judge