

Signed/Docketed on
September 12, 2014

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
## The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 08-11751 MER |
| ADAM AIRCRAFT INDUSTRIES, INC., ) | |
| ) | Chapter 7 |
| Debtor. ) | |

## ORDER

The Court considers this matter on remand from the United States District Court for the District of Colorado. The Court has reviewed the First and Final Application Under 11 U.S.C. § 330 for Approval of Attorneys' Fees and Expenses (the "Application") filed by Allen & Vellone, P.C. ("A & V"), and has analyzed the Application under the criteria set forth in 11 U.S.C. § 330(a)(3)[1] and *Johnson v. Georgia Highway Express, Inc.*[2]

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) because it concerns the administration of the estate.

## BACKGROUND

A & V was hired by the Chapter 7 Trustee to investigate and pursue claims of the Debtor against Morgan Stanley Senior Funding, Inc., Morgan Stanley & Co., Inc., and others (collectively, "Morgan Stanley"). A & V filed actions against these defendants which were ultimately settled in July, 2012. The detailed facts of this matter are contained in this Court's Order of February 1, 2013, and are hereby incorporated by reference.

---

[1] Unless otherwise stated, all future statutory references in the text are to Title 11 of the United States Code.

[2] *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), applied to bankruptcy matters by the United States Court of Appeals for the Tenth Circuit in *In re Commercial Financial Services*, 427 F.3d 804, 810-811 (10th Cir. 2005).

**DISCUSSION**

Although some of the provisions of § 330(a)(3) are similar to the factors set forth in *Johnson*, the Court will consider each set of factors separately with respect to A & V's Aapplication.

**A.    Factors under 11 U.S.C. § 330(a)(3).**

Section 330 of the Bankruptcy Code provides in pertinent part:

After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103—

> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and

> (B) reimbursement for actual, necessary expenses.

> . . .

(3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--

> (A) the time spent on such services;

> (B) the rates charged for such services;

> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

>   (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
>   (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.[3]

  1.   *The Time Spent on Such Services.*

Prior to filing the complaints, A & V's primary task was the review of voluminous documents.  A & V also interviewed several former employees of the Debtor.  Adam claims the initial complaint was "wrongly" filed in the United States District Court for the District of Colorado.  A & V contends the parties "agreed" to move the matter to this Court.  This dispute is insignificant when compared to the overarching task of determining a "reasonable fee" for A & V, since the billable hours charged for the complaint's dismissal and refiling were minimal.

After the complaint was filed, A &V's work consisted primarily of defending against Morgan Stanley's Motion to Dismiss, and later negotiating a settlement agreement. The Court notes A & V made reasonable assignments of tasks among partners, associates, and paralegals.

The Court has reviewed these tasks and the hours billed and finds the 380 hours expended to be reasonable.

  2.   *The Rates Charged for Such Services.*

The rates charged by the attorneys and paralegals at A & V for this matter ranged between $100 and $410.  Pursuant to the contingency fee agreement, A & V kept the hourly rates at the 2010 level throughout this representation, and further reduced them by 25%, resulting in a savings of $24,362.13.  The Court finds the unreduced rates charged by A & V to be comparable to those charged by other attorneys in this district with similar skills in similar cases.  The rates are therefore reasonable.

---

[3] 11 U.S.C. § 330.

> 3. *Whether the Services Were Necessary to the Administration of, or Beneficial at the Time at Which the Service Was Rendered Toward the Completion Of, a Case Under This Title.*

At the November 13, 2012 hearing on A & V's Application, the Chapter 7 Trustee, Jeffrey Weinman (the "Trustee"), testified Morgan Stanley was the primary lienholder in the bankruptcy case, and indicated the actions of Morgan Stanley constituted one of the most critical aspects of the case.[4] Therefore, the Court finds A & V's services, which resulted in a settlement under which Morgan Stanley released its remaining claims, were necessary to the administration of the estate at the time they were rendered.

In addition, as explained by the Trustee, creditors other than Morgan Stanley benefitted from the settlement. Morgan Stanley's agreement to release its lien on the funds held by the estate following the sale of assets made those funds available for distribution to creditors and for other needs of the estate. Further, Morgan Stanley's agreement to waive its unsecured claim increased the distribution to other unsecured creditors. Essentially, the settlement agreement arising out of the litigation filed by A & V provided the estate with more money than it would have had if Morgan Stanley's claims had remained in place. Therefore, A & V's services benefitted the estate.

> 4. *Whether the Services Were Performed Within A Reasonable Amount of Time Commensurate With the Complexity, Importance, and Nature of the Problem, Issue, or Task Addressed.*

The Court disagrees with Adam's contention that the Morgan Stanley matter was "average" in difficulty. Rather, it involved complex transactions involving many parties and complicated questions of potential lender liability, particularly in light of the Debtor's prepetition release of all claims against Morgan Stanley. Further, the transactions required research as to choice-of-law issues. The Court finds the services were performed in a reasonable time given the large amount of investigation and research required, and given the complexity of negotiating with a large banking institution regarding approximately $50 million in claims.

> 5. *With Respect to a Professional Person, Whether the Person is Board Certified or Otherwise Has Demonstrated Skill and Experience in the Bankruptcy Field.*

There is no evidence the attorneys at A & V are board certified in bankruptcy and this Court is unaware of any other relevant certifications they

---

[4] Transcript of Hearing held November 13, 2012, Docket No. 1253, p. 68, lines 8-14.

may hold.  However, A & V has appeared before the Court many times, and its attorneys have demonstrated skill and professionalism in bankruptcy matters, particularly those matters involving lender liability and other commercial issues.

> 6. *Whether the Compensation is Reasonable Based on the Customary Compensation Charged by Comparably Skilled Practitioners in Cases Other Than Cases Under This Title.*

This criterion, together with the similar sixth *Johnson* factor, involves the key dispute between the parties—that is, whether the so-called "hybrid" combination of an hourly fee and a contingency fee is appropriate.  As to whether such a fee is customary, Patrick Vellone estimated "95 percent of my firm's practice is hourly with only 5 percent contingency or modified contingency."[5]  According to Mr. Vellone:

> [W]e ultimately negotiated a discount of the hourly rate in exchange for a 15 percent contingency; and that contingency, as is customary in lender liability cases, is on either a recovery or a reduction in liability of the defendant.  That's standard in lender liability litigation. . . . Most, if not 99 percent, of all lender liability cases are resolved by claims reduction.[6]

Mr. Vellone further testified a discounted hourly rate fee combined with a discounted contingency fee (discounted from the general 30% -50% contingency fee) is "pretty common" and A & V had used such fee agreements in the past.[7]

Similarly, A & V agreed to represent the Trustee when other larger firms expressed no interest in this lender liability litigation.[8]  In the Trustee's experience, terms of employment combining hourly and contingency fees are common.[9]  Additionally, the Trustee indicated a term providing contingency fees on "gross recovery," rather than actual cash received, is common in lender

---

[5] *Id.*, p. 29, lines 19-21.

[6] *Id.*, p. 33, line 6 – p. 34, line 2.

[7] *Id.*, p. 35, lines 14-25.

[8] *Id.*, p. 71, lines 4-16.

[9] *Id.*, p. 72, lines 12-23; p. 81, line 22 - p. 82, line 6.

liability litigation. He described a similar case where A & V's contingency fee was approved on the basis of lien avoidance, rather than actual cash paid.[10]

The Court finds the testimony of both Mr. Vellone and the Trustee to be credible and reliable. The Court agrees the published case law regarding "hybrid" contingency fee agreements is sparse. However, such a lack of case law does not prove such fees are improper or not customary. It may simply mean disputes about them have not come before courts publishing decisions. Indeed, the United States Court of Appeals for the Tenth Circuit recognized their existence and enforceability twenty-three years ago.[11] Further, the Tenth Circuit, while cautioning courts to avoid relying on a "big risk/big reward" argument in evaluating Section 330(a)(3)(A)'s "time spent on such services" factor,[12] nonetheless recognized "Section 330(a) does not mandate any particular fee arrangement."[13] In addition, so called "hybrid" fee agreements are not unknown in nonbankruptcy matters.[14]

Accordingly, the Court finds the "hybrid" compensation is reasonable compared to similar compensation in bankruptcy and nonbankruptcy matters.

---

[10] *Id.*, p. 80, lines 3 -6.

[11] *Landsing Diversified Properties-II v. First National Bank and Trust Company of Tulsa (In re Western Real Estate Fund, Inc.)*, 922 F.2d 592, 597-598 (10th Cir. 1990) (modified on other grounds, *Abel v. West*, 932 F.2d 898, 899 (10th Cir. 1991) (finding the bankruptcy court erred in determining the hourly portion of an attorney's fee but ignoring the contingency portion of counsel's "hybrid/hourly contingency fee contract").

[12] *In re Market Center East Retail Property, Inc.*, 730 F.3d 1239, 1252 (10th Cir. 2013). *Market Center East* dealt with a compensation agreement that, unlike the agreement in this case, was entered into prepetition and was not subject to court review before its approval.

[13] *Id.*, at 1249.

[14] *See, e.g.*, *KMS Fusion, Inc. v. United States*, 39 Fed. Cl. 593, 604-605 (Fed. Cl. 1997) (An Equal Access to Justice Act case in which the Court approved the use of a fee agreement under which an attorney was paid a discounted billing rate up to a preapproved cap, with a contingency fee element to be paid if the aggregate recovery exceeded $500,000. The contingency portion of the fee was not "activated" because the aggregate recovery did not exceed $500,000.); *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 979-980 (Pa. Super. 2011)(In addressing a Wage Payment and Collection Act case, the court noted "courts are permitted to award a reasonable fee pursuant to a lodestar, a percentage of the common fund, or, if necessary, a hybrid approach."); *Arnall v. Superior Court*, 190 Cal. App. 4th 360, 371 (Cal. App. 2010) (statutory requirements for contingency fee agreements also apply to hybrid agreements); *In the Matter of the Estate of Antonio Roybal*, 144 N.M. 679, 687 (N.M. App. 2008) (under New Mexico law regarding professional conduct, a hybrid hourly rate/contingency agreement was acceptable as long as it was negotiated in good faith at arm's length).

Therefore, with respect to the statutory requirements of § 330, the Court finds the agreement here, combining reduced hourly rates for initial investigative services with a reduced contingency percentage of gross recovery, to be reasonable.

### B.  Factors Under *Johnson v. Georgia Highway Express.*

*Johnson v. Georgia Highway Express*[15] is a Fifth Circuit case setting forth twelve factors for courts to consider when awarding attorney's fees pursuant to Title VII of the Civil Rights Act of 1964.  The Tenth Circuit first adopted the use of the *Johnson* factors for the award of attorney's fees in bankruptcy cases in *In re Permian Anchor Services, Inc.*[16]  Subsequent to the adoption of 11 U.S.C. § 330, this Circuit has continued to consider the *Johnson* factors in addition to the § 330(a) factors in determining reasonable attorney's fees.[17]  The twelve *Johnson* factors as applied to the facts of this case are:

  1. *The Time and Labor Required.*

Based upon its discussion under Sections A(1) and A(4) above, the Court finds the amount of time spent by A & V was reasonable, as were the tasks performed and the amount of time spent on the tasks.

  2. *The Novelty and Difficulty of the Questions.*

As the Court noted in Section A(4) above, the Court believes the litigation against Morgan Stanley was more complex than argued by Adam.  In addition, there was the difficulty presented by the Debtor's pre-bankruptcy releases of Morgan Stanley from liability. While such questions are not unheard-of in lender liability litigation, they are nonetheless more intricate than most such matters in this Court's experience.  Accordingly, the Court finds this factor weighs in favor of finding the requested fees reasonable.

---

[15] *Johnson*, *supra*.

[16] *In re Permian Anchor Services, Inc.*, 649 F.2d 763, 768 (10th Cir. 1981).

[17] *See In re Commercial Financial Services, supra*, at 811; *In re Miniscribe Corp.*, 309 F.3d 1234, 1244 (10th Cir. 2002).

      3.      *The Skill Requisite to Perform the Legal Service Properly.*

This matter required not only skill and experience with commercial loan transactions, but also with commercial litigation and with bankruptcy law. The Court's observation with A & V in this case and in other cases indicates the firm and its members possess such skill and experience. A & V often serves as special counsel in bankruptcy cases involving disputed financial transactions.

      4.      *The Preclusion of Other Employment By the Attorney Due To Acceptance of the Case.*

A & V has not provided, nor would the Court expect as part of a fee application, specific numbers as to how many cases A & V may have had to turn down in order to perform the necessary work on this case. This factor is neutral.

      5.      *The Customary Fee.*

As noted in Sections A(2) and A(6) above, the rates charged by A & V for the services performed correspond to the rates commonly charged in this district by attorneys of similar skill and experience for similar services. There is no set upper or lower limit to such rates, but the Court notes A & V's rates fall within the range generally approved by this Court.

In addition, as set forth in detail in Section A(6) above, the combined hourly fee and contingency fee, while less common than a straight contingency fee (generally with a higher percentage charged) or a straight hourly fee, nonetheless is used by attorneys in bankruptcy matters and other matters and may be considered customary in the appropriate circumstances. Again, the Court finds the circumstances in this case to be appropriate for the use of such a fee arrangement, particularly since it involved a reduction in both the hourly rate and in the contingency fee percentage to arrive at a fairly-negotiated fee. The reasonable and customary nature of the fee arrangement is also shown by the fact it was negotiated post-petition by A & V and the Trustee, as the estate's fiduciary, after performing an initial assessment to determine the viability of the estate's claims.

For these reasons, the Court finds this factor weighs in favor of finding the requested fees reasonable.

      6.      *Whether the Fee is Fixed or Contingent.*

As the Court has already noted, and set forth in detail in Section A(6) above, the fee arrangement, consisting of straight hourly charges during the

initial investigation phase and a hybrid hourly and contingency fee during the conduct of the litigation, constitutes an appropriate and reasonable basis for awarding fees in this circumstance.

7. *Time Limitations Imposed by the Client or the Circumstances.*

Mr. Vellone explained A & V had approximately nine months to review the Debtor's claims and bring the litigation before expiration of the statute of limitations. However, after the review of the case, which was undertaken on an hourly basis, A & V felt the case against Morgan Stanley needed to be filed quickly to protect the estate's interest. Thus, while the circumstances required A & V to perform services in a prompt manner, there was no emergency. Therefore, this factor is neutral.

8. *The Amount Involved and the Results Obtained.*

Adam argues the results of the Adversary Proceeding did not benefit the estate because the main term of the Settlement Agreement was a release or subordination of its claim from the bankruptcy estate. However, the Court finds benefit to an estate does not have to take the form of cash payments.[18] Rather, the Court finds the results obtained by A & V in the Morgan Stanley litigation warranted its fees according to its hybrid agreement even though it did not achieve everything asked for in its complaint.[19]

Specifically, as pointed out by the Trustee, the recovery to the estate consisted of the withdrawal of the portion of Morgan Stanley's secured claim covered by collateral, that is, the approximately $2 million in sales proceeds, as well as Morgan Stanley's agreement not to assert any unsecured claim. This

---

[18] *See In re Blue Stone Real Estate*, 487 B.R. 573, 576 (Bankr. M.D. Fla. 2013) (citations omitted) (noting services may be necessary and benefit an estate even if a financial benefit is not shown); *In re Double J Cattle Co.*, 226 B.R. 284, at *6 (10th Cir. BAP Oct. 24, 1997) (Table) (same).

[19] In addition, the Court does not agree A & V's initial filing of the action in the United States District Court, with subsequent refiling in this Court, constitute services which are not compensable. Mr. Vellone indicated the need to file a complaint promptly following the initial investigation of the claims, and noted the focal point of the claims filed in the District Court was contractual. The Trustee further explained the initial filing was made in the District Court to avoid giving Morgan Stanley an opportunity to delay the case by raising withdrawal of the reference arguments with respect to the claims. Later, A & V and the Trustee decided to refile the case as an adversary proceeding focusing on the bankruptcy issues of equitable subordination and claims allowance. The change in the focus of the claims does not mean the work on both complaints is not compensable. *See* Transcript of Hearing held November 13, 2012, Docket No. 1253, p. 37, lines 3-21; p. 74, line 3 – p. 75, line 13.

enabled the Trustee to distribute funds to creditors other than Morgan Stanley, a distinct financial benefit to the estate. Further, the Court notes the nature of litigation is such that parties often do not receive all they request in complaints, and that part of the litigation settlement process involves a risk-benefit analysis to determine the best "deal" obtainable without the uncertainty and cost of trial. Therefore, the Court finds this factor weighs in favor of A & V's fee request.

> 9. *The Experience, Reputation, and Ability of the Attorneys.*

A & V has demonstrated professionalism and skill in many cases before this Court, and the Court finds the attorneys have substantial experience in litigation of this type. In addition, Mr. Vellone testified A & V had engaged in previous litigation involving Morgan Stanley.[20] Accordingly, this factor weighs in favor of A & V's fee request.

> 10. *The "Undesirability" of the Case.*

The record shows the Morgan Stanley litigation was at least somewhat undesireable. Specifically, the Trustee discussed the case with his primary counsel and they expressed no interest.[21] In addition, he stated cases such as the Morgan Stanley case are risky and can consume all of an estate's assets.[22] Accordingly, this factor weighs in favor of the requested fees and the hybrid fee arrangement.

> 11. *The Nature and Length of the Professional Relationship With the Client.*

The Trustee noted he had previous experience employing A & V, with good results.[23] Further, Mr. Vellone stated he has known the Trustee for twenty-five of the twenty-seven years Mr. Vellone has been in practice, and he has represented the Trustee or served as co-counsel with the Trustee in over one hundred cases. The parties demonstrated they have a long professional relationship and think well of each other, thus adding support for the requested fees.

---

[20] Transcript of Hearing held November 13, 2012, Docket No. 1253, pp. 33-36.

[21] *Id.*, p. 69, lines 1–4.

[22] *Id.*, p. 83, lines 3–13.

[23] *Id.*, p. 81, line 22 - p. 82, line 12.

*12.   Awards in Similar Cases.*

A & V pointed out several cases in other districts in which hourly fee enhancements or contingency fees were approved on a "gross amounts recovered" basis, rather than cash payments.[24] Adam, on the other hand, cited to a case where a court declined to award a contingency on a reduction in liability.[25] The Court has reviewed these cases and finds them instructive, but not dispositive.[26] Rather, the Court notes Mr. Vellone testified he had performed services under a combined hourly and contingency fee arrangement in other cases, and the Court finds his testimony to be credible. He has had, for example, a case where a lien assignment resulted in a fee that was five times the lodestar amount, and in another case a verdict was returned for the opposing party, and the fee was only part of the lodestar amount accrued.[27] In addition, the Trustee stated he believed the "gross amount recovered" term is quite common in lender liability litigation.[28] The Court also finds this testimony to be credible.

---

[24] *In the Matter of Pilgrim's Pride Corp.*, 690 F.3d 650, 657 (5th Cir. 2012); *In re Integrated Knowledge Marketing, Inc.*, 2007 WL 7540949, at *8 (9th Cir. BAP Nov. 6, 2007) (Not Reported in B.R.); *F.V. Steel and Wire Co. v. Houlihan Lokey Howard & Zukin Capital, L.P.*, 350 B.R. 835, 841 (E.D. Wis. 2006); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 188-189 (D. Mass. 1998); *In re Omegas Group, Inc.*, 195 B.R. 875, 881 (Bankr. W. D. Ky. 1996).

[25] *In re Bjone*, 1987 WL 857514 (Bankr. N.Dak. 1987).

[26] As noted above, the Tenth Circuit explained:

Although we hold that the bankruptcy court must consider the § 330(a)(3) and *Johnson* factors in evaluating whether a proposed fee amount is reasonable, this question is distinct from what compensation structures are permitted. Section 330(a) does not mandate any particular fee arrangement. As we have previously noted, a bankruptcy court has "wide discretion" to authorize many types of fee arrangements–provided the total fee is reasonable when considered against the relevant factors.

*Market Center East*, *supra*, at 1249. Moreover, the United States Bankruptcy Court for the District of New Mexico, on remand of the *Market Center* case, calculated a reasonable fee by using the factors under § 330 and *Johnson*, and found a hybrid fee was warranted for special non-bankruptcy counsel. *In re Market Center East Retail Property, Inc.*, 2014 WL 1407302, at *4 (Bankr. D. N. M. April 10, 2014) (citing this Court's previous approval of the hybrid arrangement in this case in *In re Adam Aircraft Industries, Inc.*, 2013 WL 414213 (Bankr. D. Colo. Feb. 1, 2013)).

[27] Transcript of Hearing held November 13, 2012, Docket No. 1253, p. 35, line 7– p. 36, line 3.

[28] *Id.*, p. 79, line 21 – p. 80, line 6.

**CONCLUSION**

For the above reasons, the Court finds the fees requested by A & V in the Application, both hourly and contingency-based, to be reasonable under 11 U.S.C. § 330(a)(3) and *Johnson*.[29]  Accordingly,

IT IS ORDERED A & V is awarded 75% of its standard hourly fees, reduced to 2010 rates, for an hourly fee total of $73,086.37, and a contingency fee of 15% of $3,099,997.22, or $464,999.58, for a total award of $538,085.95 in fees and $10,145.82 in expenses.

IT IS FURTHER ORDERED A & V's request in its Proposed Findings of Fact and Conclusions of Law for permission to submit a second fee application based on time spent on Adam's objection and the appeal is DENIED.

Dated September 12, 2014                    BY THE COURT:

                                            _____
                                            Michael E. Romero, Chief Judge
                                            United States Bankruptcy Court

---

[29] The Court also finds the requested expenses reasonable based on the documentation submitted by A & V, although the award of the expenses was not appealed.